UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF JULIAN ESTRADA GOMEZ | Case No. 3:20-mc-01034-YY<br><br>OPINION AND CERTIFICATION FOR EXTRADITION |

YOU, Magistrate Judge.

The government of the United Mexican States ("Mexico") seeks the extradition of Julian Estrada Gomez ("Estrada Gomez" or "fugitive") pursuant to the Extradition Treaty between the United States of America and Mexico, signed at Mexico City on May 4, 1978 ("Extradition Treaty") and entered into force on January 25, 1980. Mexico seeks extradition of the fugitive to prosecute him for the charge of aggravated murder of his son, Julian Estrada Ramirez ("Estrada Ramirez" or "decedent"), allegedly committed on January 3, 2008.

Estrada Gomez opposes a certification of extradition on grounds that Mexico has failed to demonstrate probable cause for his arrest and extradition. The court has considered the extensive record and the legal arguments made by counsel at the extradition hearing. For the reasons herein, the court finds that Mexico has satisfied its burden under 18 U.S.C. § 3184 *et. seq.* and certifies that the fugitive is eligible for extradition to Mexico to face prosecution for the charge of aggravated murder.

1 – OPINION AND CERTIFICATION FOR EXTRADITION

I.  **Legal Standards**

   A.  **Requirements for a Certification of Extraditability**

Extradition proceedings are governed by 18 U.S.C. § 3184, which confers jurisdiction on "any justice or judge of the United States, or any magistrate judge authorized to do so by a court of the United States" to conduct an extradition hearing under the relevant extradition treaty and to issue a certification of extraditability to the Secretary of State.[1] Courts have interpreted the statute to require the United States, which acts on behalf of the nation seeking extradition, to demonstrate each of the following elements:

> (1) the court possesses subject matter jurisdiction to conduct extradition proceedings;
> (2) the court possesses personal jurisdiction over the person named in the extradition request;
> (3) a valid extradition treaty exists between the requesting state and the United States;
> (4) the extradition treaty between the requesting state and the United States is, and at all relevant times has been, in full force and effect;
> (5) the person named in the extradition request is charged with having committed a criminal offense within the jurisdiction of the requesting state;
> (6) the charged offense is extraditable under the relevant extradition treaty (that is, the offense charged falls within the terms of the relevant extradition treaty);
> (7) the person named in the extradition request is the person arrested and brought before the court; and
> (8) there is competent evidence establishing probable cause to believe that the person named in the extradition request committed the charged offense.

*In re Extradition of Luna-Ruiz*, No. CV 13-5059 VAP AJW, 2014 WL 1089134, at *2 (C.D. Cal. Mar. 19, 2014), *aff'd sub nom. Luna-Ruiz v. Barr*, 753 F. App'x 472 (9th Cir. 2019).

---

[1] United States Magistrate Judges may hear and evaluate extradition matters when "authorized to do so by a court of the United States." 18 U.S.C. § 3104. In the District of Oregon, magistrate judges are "authorized to perform all of the duties and functions prescribed and authorized by 28 U.S.C. § 636 and any other statutes or Federal Rules of Procedure which authorize a Magistrate Judge to perform judicial duties or functions." Standing Order 07-MC-9207 (D. Or. Sept. 7, 2007).

### B. Evidentiary Standards Within Extradition Proceedings

"Extradition treaties are to be liberally construed so as to effect their purpose . . . to surrender fugitives for trial for their alleged offenses." *In re Santos*, 795 F. Supp. 2d 966, 970 (C.D. Cal. 2011) (quotation omitted). The admissibility of evidence within an extradition proceeding is governed by "the general extradition law of the United States and the provisions" of the relevant extradition treaty. *Emami v. U.S. District Court*, 834 F.2d 1444, 1450 (9th Cir. 1987).

Relatedly, because an extradition hearing is *sui generis*, and neither a civil nor criminal proceeding, a judge is not restricted by "the rules of evidence and civil procedure that govern federal court proceedings." *Chavez, In re Extradition of*, 408 F. Supp. 2d 908, 911 (N.D. Cal. 2005). Thus, for example, hearsay evidence that is deemed reliable may be admitted in support of probable cause for charges against a fugitive. *Then v. Melendez*, 92 F.3d 851, 855 (9th Cir. 1996); *see also Quinn v. Robinson*, 783 F.2d 776, 815-16 (9th Cir. 1986) ("Barring hearsay from extradition proceedings would thwart one of the objectives of bilateral extradition treaties by requiring the requesting nation to send its citizens to the extraditing country to confront the accused.").

## II. Summary of Judicial Proceedings

### A. Procedural History

On October 5, 2020, the United States filed a complaint detailing Mexico's request for Estrada Gomez's provisional arrest with a view toward his extradition. ECF 1. The court issued a warrant, and Estrada Gomez was arrested on November 9, 2020, in Oregon. ECF 2, 12. The court then granted, over the objection of the United States, the fugitive's request for conditional

release from detention pending extradition proceedings, but restricted his travel to this judicial district and subjected him to GPS monitoring. ECF 9-10.

After two unopposed requests from Estrada Gomez to continue the extradition hearing, the United States filed its memorandum in support of Mexico's extradition request on July 12, 2021, along with a digital copy of supporting exhibits from the Mexican authorities. ECF 18, 18-1. On July 19, 2021, Estrada Gomez filed his opposition memorandum, which was accompanied by supporting exhibits. ECF 19, 19-1-3. The United States filed its Reply on August 2, 2021, and this court held an extradition hearing in compliance with 18 U.S.C. § 3184 on August 20, 2021. ECF 20, 22. At the hearing, the court received the original and physical copy of Mexico's supporting exhibits. ECF 22.

    **B.**    **The Government's Evidence**

The Government has submitted the following evidence in support of its extradition request. Estrada Gomez does not dispute the authenticity of these documents. *See generally* Opp., ECF 19.

    1.    Declaration of Tom Heinemann, Attorney Adviser, Office of the Legal Advisor, United States Department of State (Jan. 26, 2021) ("Heinemann Decl."), Ex. 1 at 1-2, ECF 18-1.

    2.    Extradition Request from the Government of Mexico. Heinemann Decl., Ex. 1 at 3-12 (Spanish), 13-24 (English), ECF 18-1.

    3.    Extradition Treaty between the United States and Mexico. Heinemann Decl., Ex. 1 at 25-32 (English), 33-38 (Spanish), ECF 18-1 ("Extradition Treaty").

    4.    Certification of Documentary Evidence, prepared by David J. Mico, Consul General, Ex. 1 at 42, ECF 18-1.

    5.    Affidavit of Bergen Bassett, translator, Ex. 1 at 43, ECF 18-1.

4 – OPINION AND CERTIFICATION FOR EXTRADITION

      6.      Affidavit of Patricia Karina Hernandez, Agent of the Office of Public Prosecutor, General Division of International Proceedings of the Office of the Assistant Attorney General for Legal and International Affairs of the Office of the Prosecutor General of the Republic, Ex. 1 at 45-64, ECF 18-1.

      7.      Judicial Decision from the Superior Court of Justice of the State of Zacatecas, First Trial and Family Court of Jalpa, issuing an arrest warrant for the fugitive, Ex. 1 at 66-89, ECF 18-1.

      8.      Excerpts of the Criminal Code for the State of Zacatecas, Ex. 1 at 91-98, ECF 18-1.

      9.      Judicial Decision from the Superior Court of Justice of the State of Zacatecas, First Trial and Family Court of Jalpa, regarding the applicable statute of limitations for the crime of aggravated murder, Ex. 1 at 99-101, ECF 18-1.

      10.      Official Report, Agent of the Office of the Public Prosecutor, regarding the crime scene, Ex. 1 at 103-110, ECF 18-1.

      11.      January 4, 2008 Statement of Bibiana Lara Castañon, wife of the fugitive.  Lara Castañon Decl., Ex. 1 at 112-13, ECF 18-1.

      12.      January 4, 2018 Statement of Porfirio Estrada Lara, son of the fugitive.  Estrada Lara Decl., Ex. 1 at 115, ECF 18-1.

      13.      January 4, 2008 Statement of Esperanza Lara Serna, wife of the decedent.  Lara Serna Decl., Ex. 1 at 117-18, ECF 18-1.

      14.      January 29, 2008 Statement of Maria Ascencion Estrada Gomez, sister of the fugitive.  Ascencion Estrada Gomez Decl., Ex. 1 at 120-21, ECF 18-1.

15. January 4, 2008 Autopsy Report, prepared by Medical Examiners Patricia del Hoyo Bramasco and Tomsa Figueroa Cruz, Legal Medicine Department, Attorney General's Office, State of Zacatecas.  Ex. 1 at 123-24, ECF 18-1.

16. Death Certificate of Julian Estrada Ramirez.  Ex. 1 at 126, ECF 18-1.

17. Ballistics Report Analyzing Bullets in the Body of the Decedent, prepared by Omar Escobedo Mendoza, Expert Services Directorate, Attorney General's Office, State of Zacatecas.  Ex. 1 at 128-35, ECF 18-1.

18. Ballistics Report Analyzing Trajectory of Bullets Fired at the Decedent, prepared by Omar Escobedo Mendoza, Expert Services Directorate, Attorney General's Office, State of Zacatecas.  Ex. 1 at 137-67, ECF 18-1.

19. May 11, 2018 Statement of Juan de la Cruz Lara Saldivar, providing photographic identification of the fugitive.  Ex. 1 at 169-72, ECF 18-1.

20. May 11, 2018 Statement of Julia Serna Lara, providing photographic identification of the fugitive.  Ex. 1 at 173-76, ECF 18-1.

21. Photograph and Birth Certificate of Julian Estrada Gomez, the fugitive.  Ex. 1 at 178-79, ECF 18-1.

22. Certified Copy of Arrest Warrant and Supporting Exhibits in Spanish, provided by Alejandro Lopez Gonzalez, Adjunct General Director of the Official Gazette of the Federation, Office of the Prosecutor General of the Republic.  Gonzalez Decl., Ex. 1 at 181-361, ECF 18-1.

### C. The Fugitive's Evidence

Estrada Gomez has submitted the following evidence in opposition to the Government's extradition request:

    1.       Declaration of Julian Estrada Gomez, the fugitive.  Estrada Gomez Decl., Ex. A, ECF 19-1.

    2.       Declaration of Porfirio Estrada Lara, son of the fugitive.  Estrada Lara Decl., Ex. B, ECF 19-2.

    3.       Declaration of Simon Gomez Estrada, nephew of the fugitive.  Gomez Estrada Decl., Ex. C, ECF 19-3.

## III.    Analysis: Requirements for Certification

### A.    Subject Matter Jurisdiction

This court possesses subject matter jurisdiction to conduct extradition proceedings pursuant to 18 U.S.C. § 3184.  Estrada Gomez does not dispute that this court has subject matter jurisdiction to conduct this extradition proceeding.

### B.    Personal Jurisdiction

This court possesses personal jurisdiction over Estrada Gomez, a fugitive apprehended within the jurisdiction of the District of Oregon.  18 U.S.C. § 3184 (allowing a judge to, "upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government . . . issue his warrant for the apprehension of the person so charged").  Estrada Gomez does not dispute that this court possesses personal jurisdiction over him.

### C.    Valid Extradition Treaty

A valid extradition treaty between the United States and Mexico exists and is, and has been at all material times, in full force and effect.  Heinemann Decl., Ex. 1 at 1-2, ECF 18-1.  Estrada Gomez does not dispute that a valid extradition treaty exists between the United States and Mexico and that it has been, at all material times, in full force and effect.

### D. Charged Offense Within the Jurisdiction of the Requesting State

Estrada Gomez has been charged by Mexico with aggravated murder, a crime that is defined and described in Article 6, section I, Article 11, section I, and Articles 293, 294, 299, and 301, section I of the Criminal Code of Zacatecas, the Mexican state where the incident in this case took place. Heinemann Decl., Ex. 1 at 14, ECF 18-1; *see also* Hernandez Affidavit, Ex. 1 at 57-62, ECF 18-1; Judicial Decision from the Superior Court of Justice of the State of Zacatecas (arrest warrant), Ex. 1 at 66, ECF 18-1; Excerpts of the Criminal Code for the State of Zacatecas, Ex. 1 at 96, ECF 18-1. Estrada Gomez does not dispute that he has been charged with a criminal offense within the jurisdiction of the requesting state.

### E. Dual Criminality

The Extradition Treaty requires that "[e]xtradition shall take place . . . for willful acts which fall within any of the clauses of the Appendix [to the Treaty] and are punishable in accordance with the laws of both Contracting parties by deprivation of liberty the maximum of which shall not be less than one year." Extradition Treaty, Heinemann Decl., Ex. 1 at 26, ECF 18-1. Aggravated murder, the offense Estrada Gomez has been charged with, is one of the acts specifically identified in the Appendix to the Treaty. *Id.* at 32. In Mexico, the offense is punishable by imprisonment for 16 to 30 years. *See* Hernandez Affidavit, Ex. 1 at 57-58, ECF 18-1.

The aggravated murder charge also meets the "dual criminality" requirement for extradition. "Under the principle of dual criminality, no offense is extraditable unless it is criminal in both jurisdictions." *Caplan v. Vokes*, 649 F.2d 1336, 1343 (9th Cir. 1981) (quotation omitted). "[D]ual criminality exists if the essential character of the acts criminalized by the law of each country are the same and if the laws are substantially analogous." *Oen Yin-Choy v.*

*Robinson*, 858 F.2d 1400, 1404 (9th Cir. 1988) (quotation omitted).  If Estrada Gomez's criminal act had occurred in this judicial district, it would be subject to prosecution as a felony with the possibility of life imprisonment.  *See* 18 U.S.C. § 13 (incorporating state law and penalties within state boundaries), Or. Rev. Stat. § 163.105(1)(a) ("[W]hen a defendant is convicted of aggravated murder . . . the defendant shall be sentenced . . . to death, life imprisonment without the possibility of release[,] or parole or life imprisonment.").

Estrada Gomez argues, through proffered evidence, that his actions were taken in self-defense and thus lawful under the laws of the United States.  Opp. 11, ECF 19.  Both the admissibility of the fugitive's proffered evidence and affirmative defense are evaluated in the context of whether probable cause exists in this case.  The court will therefore address objections related to dual criminality as part of the discussion on probable cause.

### F. Person Sought is Before the Court

Mexican authorities have submitted two sworn statements photographically identifying the fugitive as the accused person in the above captioned matter.  *See* de la Cruz Lara Saldivar and Serna Lara Statements, Ex. 1 at 169-76, ECF 18-1.  Estrada Gomez does not dispute that he is the person sought by the Mexican authorities in relation to extradition proceedings in the above captioned matter.

### G. Probable Cause

The United States, acting on Mexico's behalf, has proffered numerous exhibits buttressing a finding of probable cause.  Estrada Gomez contests such a determination, arguing that while the government's exhibits may support a finding of probable cause, his affirmative defense of self-defense, paired with "explanatory evidence" he offers, "obliterates" a finding of probable cause.  Opp. 12, ECF 19.

### 1. Legal Standard

Article 3 of the Extradition Treaty provides:

> Extradition shall be granted only if the evidence be found sufficient, according to the laws of the requested Party, either to justify the committal for trial of the person sought if the offense of which he has been accused had been committed in that place, or to prove that he is the person convicted by the courts of the requesting Party.

Heinemann Decl., Ex. 1 at 26, ECF 18-1. Courts have interpreted this provision to require "competent evidence that would be sufficient to establish probable cause to hold a defendant for trial under United States law." *Emami*, 834 F.2d at 1447 (construing similar treaty language). "Certification of extradition is lawful only when the requesting nation has demonstrated probable cause to believe the accused person is guilty of committing the charged crimes." *Barapind v. Enomoto*, 400 F.3d 744, 747 (9th Cir. 2005).

"[T]he probable cause standard applicable in extradition proceedings is identical to that used by courts in federal preliminary hearings." *Sidali v. I.N.S.*, 107 F.3d 191, 199 (3d Cir. 1997) (citing *Sindona v. Grant*, 619 F.2d 167, 175 (2d Cir. 1980)); *Castro Bobadilla v. Reno*, 826 F. Supp. 1428, 1433 (S.D. Fla. 1993), *aff'd*, 28 F.3d 116 (11th Cir. 1994)). That standard examines whether there is "any evidence warranting the finding that there was a reasonable ground to believe the accused guilty." *Mirchandani v. United States*, 836 F.2d 1223, 1226 (9th Cir. 1988) (quoting *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925)). Put differently, probable cause is "defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense.'" *Gerstein v. Pugh*, 420 U.S. 103, 111-12 (1975) (quoting *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964)).

This court's inquiry is limited to "whether the crime is extraditable and whether there is probable cause to support the charge." *Prasoprat v. Benov*, 421 F.3d 1009, 1014 (9th Cir. 2005).

"An extradition proceeding is not a trial; the relevant determination is confined to whether a prima facie case of guilt exists that is sufficient to make it proper to hold the extraditee for trial." *Emami*, 834 F.2d at 1452. "If the evidence is sufficient to sustain the charge, the inquiring magistrate judge is *required* to certify the individual as extraditable to the Secretary of State and to issue a warrant." *Blaxland v. Commonwealth Dir. of Pub. Prosecutions*, 323 F.3d 1198, 1208 (9th Cir. 2003) (emphasis added).

### 2.     Government's Evidence to Support Probable Cause

The United States, acting on Mexico's behalf, has submitted numerous exhibits to support a finding of probable cause that Estrada Gomez committed the crime of aggravated murder. That evidence, summarized below, is "sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Beck*, 379 U.S. at 91.

First, the evidence establishes that Estrada Gomez and Estrada Ramirez "did not have a good relationship." Lara Serna Decl., Ex. 1 at 117, ECF 18-1. Estrada Ramirez was "very resented towards his father" because he believed that Estrada Gomez "abandoned him when he was little, leaving him to be raised by some uncles" in Mexico. *Id.* Despite the passage of time, the decedent's animosity toward his father remained: in the weeks prior to the shooting, Estrada Ramirez "bothered his father a lot, he would telephone his father to insult him." Asencion Estrada Gomez Decl., Ex. 1 at 120, ECF 18-1.

Next, the exhibits illustrate the events that led to Estrada Ramirez's death. In January 2008, Estrada Gomez traveled to Mexico to visit family. On January 3, 2008, Estrada Ramirez learned of his father's travel plans. He informed his wife, Esperanza Lara Serna, of his intent to direct his uncles to return animals they cared for on Estrada Gomez's behalf because the uncles

11 – OPINION AND CERTIFICATION FOR EXTRADITION

"[were] not [Estrada Gomez's] servants." Lara Serna Decl., Ex. 1 at 117, ECF 18-1. The decedent then took a rifle and left his home "very determined" and "a little drunk." *Id.*

Later that afternoon, Estrada Ramirez arrived at the home of his aunt, Asencion Estrada Gomez ("Asencion"). The decedent asked if his father was there; Asencion confirmed that Estrada Gomez had returned to work on building his house. Asencion Estrada Gomez Decl., Ex. 1 at 121, ECF 18-1. Noticing that her nephew appeared intoxicated, Asencion encouraged Estrada Ramirez to return home and to not confront his father. *Id.*

Instead, a little "later on," Asencion witnessed her nephew driving "towards the place where his father was going." *Id.* She testified:

> But later on, I saw [Estrada Ramirez] was coming in his truck and in the distance I saw him making a firearm shot, then another. I could not see the truck but I was hearing the noise, and I know that noise. Upon arriving at a corral, I heard another gunshot. He was going towards the place where his father was working. Then I heard several gunshots, I does not exactly how many, but they were a lot. It happened approximately at 17:00 hours. Due to the gunshots, I suspected that something bad had happened, but I did not know what.

*Id.* Porfirio Estrada Lara, the decedent's stepbrother, recounted that immediately after the incident, Asencion described what had happened to family members:

> A sister of my father who is very old [Asencion] told us that [Estrada Ramirez] arrived to the house shooting in the air. Then, he left towards the place where my father was building a house, she heard some shots and it was all that she told us.

Estrada Lara Decl., Ex. 1 at 115, ECF 18-1.

A few minutes later, Estrada Gomez arrived at Asencion's home with a rifle in his hands. Statement of Asencion Estrada Gomez, Decl., Ex. 1 at 121, ECF 18-1. According to Asencion, Estrada Gomez stated that "he had finished [Estrada Ramirez] because he had shot at him." *Id.* Around the same time, Estrada Gomez's wife, Bibiana Lara Castañon, confirmed she had seen her husband carrying a .22 caliber rifle. Lara Castañon Decl., Ex. 1 at 112, ECF 18-1.

12 – OPINION AND CERTIFICATION FOR EXTRADITION

The exhibits also illustrate the state in which the decedent's corpse was found. A police report detailing the crime scene described that Estrada Ramirez was found in his truck, "sitting with his head leaning toward his right side. His left hand is over the left thigh, the right is over the blue case to store compact disks." Official Report of the Agent of the Office of the Public Prosecutor, Ex. 1 at 104-05, ECF 18-1. Next to the corpse was a Remington Model 742 30-06 semi-automatic rifle; "the butt of the rifle was leaning on the middle section of the floor of the truck . . . and its barrel leaning on the back" of the passenger seat. *Id.* at 105. Additionally, a "shell caliber 30-06" was found on the floor of the passenger side of the vehicle. *Id.* at 104.

Forensic reports confirm Estrada Ramirez died from gunshots to the head fired from a .22 caliber long rifle. *Id.* at 122-23, 131. In a separate forensic report, a ballistics expert from the Mexican government concluded that Estrada Ramirez's truck was struck by six bullets fired from "approximately two meters" away from the vehicle in a trajectory of "back to front, left to right[,] and bottom to top." *Id.* at 140-41.

The preceding facts are "sufficient to warrant a prudent man" to believe that Estrada Gomez committed the crime charged by the Mexican authorities: aggravated murder with advantage that resulted in Estrada Ramirez's death. *Beck*, 379 U.S. at 91. The Criminal Code for the State of Zacatecas defines homicide as "any person who takes the life of another human being." Excerpts of Zacatecas Criminal Code, Ex. 1 at 96, ECF 18-1. For a homicide to be considered aggravated via unfair advantage, it must have been committed "when the defendant is in no danger of being killed or bodily injured by the victim." *Id.*

Here, Estrada Gomez admitted to killing Estrada Ramirez, and the bullets in Estrada Ramirez's body match those fired by the .22 caliber rifle that witnesses saw Estrada Gomez carrying. Ballistics reports prepared by the Mexican government indicate Estrada Ramirez's

13 – OPINION AND CERTIFICATION FOR EXTRADITION

truck was struck by six bullets fired from roughly two meters away. No weapons were found on Estrada Ramirez's person, and while a Remington semi-automatic rifle was found next to him, the police report indicates that it was pointed upward when Estrada Ramirez was found. These facts align with the theory suggested by the Mexican authorities:

> This, given that as it is observed from the eviden[ce], the victim was driving his motor vehicle when the firearm impacts were caused by the accused. Thus it was impossible for the victim to defend himself or repel the aggression he was subjected to. It also added to the conduct of the accused, the fact that he waited for the precise moment in which he could surprise and harm the victim; given that he was lying in wait so as to achieve his goal. This, since as it is observed in the expert opinion [o]n ballistic paths, the shots were made from bottom to top. Hence, it is assumed that the perpetrator placed himself in a position where the victim could not notice his presence; making impossible any reaction that the now deceased may have had. . . .

Reply 3-4, ECF 20 (quoting Judicial Decision from the Superior Court of Justice of Zacatecas (arrest warrant), Ex. 1 at 81-82, ECF 18-1).

To be clear, the government's evidence does not summarily and unequivocally demonstrate that Estrada Gomez is guilty of aggravated murder. As Estrada Gomez notes, some statements in the record suggest the possibility that his actions were taken in self-defense. *See* Opp. 16-17, ECF 19. For example, the decedent's wife recalled that on the day of his killing, Estrada Ramirez evinced a desire to confront his father and left the house intoxicated, looking "determined," and with a rifle in his hands. Lara Serna Decl., Ex. 1 at 117, ECF 18-1. The decedent's aunt remarked that in the minutes before the fatal shots were fired, Estrada Ramirez was firing shots from a distance while driving toward Estrada Gomez's location. Asencion Estrada Gomez Decl., Ex. 1 at 121, ECF 18-1. And in the aftermath of the shooting, Estrada Gomez admitted to shooting his son, but only because his son was shooting at him first. *Id.* In other words, there is evidence within the government's case that can be construed to support a self-defense theory.

14 – OPINION AND CERTIFICATION FOR EXTRADITION

However, "the existence of some evidence that *could suggest* self-defense does not negate probable cause." *Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015) (emphasis added). At this stage, the court's role is limited to evaluating "whether there is competent evidence to support the belief that the accused has committed the charged offense." *Quinn*, 783 F.2d at 815. The government has supplied enough evidence to meet that threshold determination, and the fugitive's explanations do not obliterate a finding of probable cause.

### 3. Fugitive's Evidence to Support Self-Defense

In addition to identifying imperfections within the government's evidence, Estrada Gomez submitted three declarations that are "explanatory in nature" to bolster his argument of self-defense. Opp. 14, ECF 19. The declarations primarily offer insight on Estrada Ramirez's resentment toward his father and his actions on the day of the shooting.

The most critical information comes from the fugitive's own statement: Estrada Gomez declares that immediately before he fired the fatal shots, his son was "holding a gun in his hands" and "try[ing] to kill" him. Estrada Gomez Decl. ¶¶ 11, 13, ECF 19-1. The government objects to the consideration of this evidence, arguing that if the court does so, it would violate the bar against contradictory evidence. Reply 6-7, ECF 20.

While the court possesses "broad discretion" to determine the admissibility of evidence at an evidentiary hearing, "[p]articipation by the fugitive at the extradition proceeding is limited; he is not permitted to introduce evidence on the issue of guilt or innocence but can only offer evidence that tends to explain the government's case of probable cause." *Santos v. Thomas*, 830 F.3d 987, 1007 (9th Cir. 2016) (en banc); *Hooker v. Klein*, 573 F.2d 1360, 1368 (9th Cir. 1978). Evidence "that explain[s] matters referred to by the witnesses for the government" may be admitted, while "evidence in defense" that "contradict[s] the testimony for the prosecution" is

excluded. *Charlton v. Kelly*, 229 U.S. 447, 461 (1913); *Collins v. Loisel*, 259 U.S. 309, 316-17 (1922) (quotation removed). Distinguishing "between explanatory and contradictory evidence is easier stated than applied." *Santos*, 830 F.3d at 992. However, by analyzing the very definition of explanatory evidence that Estrada Gomez offers, the contradictory nature of his evidence becomes clear.

Specifically, Estrada Gomez argues his declaration, which details the seconds before his fatal shots, is admissible because it "essentially accepts the substance of the requesting country's evidence as true, but it casts the requesting country's evidence in a light that . . . negates or obliterates the inference of guilt." Opp. 12, ECF 19 (internal quotations omitted) (quoting *Santos*, 830 F.3d at 1044 (en banc) (Callahan, J. dissenting)). However, this quotation from Judge Callahan's dissent omits a dispositive definitional term at the beginning of the sentence. The quoted sentence, in its entirety, reads:

> "Explanatory" evidence *is undisputed evidence* that essentially accepts the substance of the requesting country's evidence as true, but casts the requesting country's evidence in a light that, although innocent, negates or "obliterates" the inference of guilt.

*Santos*, 830 F.3d at 1044 (Callahan, J. dissenting) (emphasis added). The omitted portion is critical because the crux of the information Estrada Gomez provides—that his son was shooting at him—is disputed by evidence presented by the government. Specifically, Estrada Gomez's declaration that his son was holding a gun and firing at him is contradicted by the government's evidence that (1) the decedent's corpse was found unarmed, and (2) Porfirio Estrada Lara's recollection of Asencion Estrada Gomez describing that the decent was firing in the air (as

opposed to at Estrada Gomez).[2] *See* Official Report of the Agent of the Office of the Public Prosecutor, Ex. 1 at 104, 106-08, ECF 18-1; Estrada Lara Decl., Ex. 1 at 115, ECF 18-1. Those uncontroverted facts are in opposition to Estrada Gomez's recollection of events; the fugitive's declaration is therefore contradictory and cannot be considered by the court.

Moreover, even if Estrada Gomez's evidence was admissible, his claim of self-defense would fail on two additional grounds: first, that courts generally do not evaluate affirmative defenses when evaluating whether probable cause exists to support extradition, and second, that the affirmative defense would not displace a finding of probable cause. The Ninth Circuit's memorandum opinion in *Luna-Ruiz v. Barr* is instructive. 753 F. App'x 472 (9th Cir. 2019). In that case, like this one, a fugitive claimed self-defense in challenging his extradition to Mexico to face a charge of attempted homicide. *Id.* at 473. Unlike this case, however, the facts sustaining the fugitive's defense were attested to by eyewitnesses to the altercation. *See id.* at 472-73 ("Eyewitness accounts of the shooting state that the victim punched [the fugitive] while [the fugitive] was seated inside a vehicle. [The fugitive] then shot the victim in the head at point-blank range and drove away, leaving the victim to die."). Despite the undisputed evidence that the victim assaulted the fugitive first, the Ninth Circuit declined to disturb the extradition court's finding that probable cause existed:

> Courts generally do not consider affirmative defenses when determining whether

---

[2] Both sides have presented their respective theories on how the evidence should be interpreted. For example, the government argues in its Reply that "the fairest conclusion to be drawn" from the record "is that the decedent announced his approach by shooting into the air, and [the fugitive] la[id] in wait and then gunned him down." Reply 8-9, ECF 20. At oral argument, counsel for Estrada Gomez argued that factors such as the fugitive's height and the relative caliber of his firearm bolstered a theory of self-defense. However, "the extradition court does not have to determine which party's evidence represents the truth where the facts are contested." *Santos*, 830 F.3d at 1007.

> probable cause exists to support an extradition request. But even assuming arguendo [the] claim is properly before us, it still fails because competent evidence supports the magistrate's probable cause determination.

*Id*. at 473 (citing *Charlton*, 229 U.S. at 462) (internal citation omitted). If even eyewitness accounts that the victim struck the fugitive first could not sustain a successful self-defense challenge to probable cause in *Luna-Ruiz*, then *a fortiori* the fugitive's own uncorroborated claims of being shot at first cannot do so here. *Id.*

## CERTIFICATE OF EXTRADITABILITY

Having heard and considered the evidence and arguments in this matter, and based on the findings and conclusions established above, the court certifies to the Secretary of State of the United States of America that:

1. This court has subject matter jurisdiction over extradition proceedings.

2. This court possesses personal jurisdiction over the fugitive, Julian Estrada Gomez.

3. A valid Extradition Treaty exists between the United States and Mexico.

4. The Extradition Treaty between the United States and Mexico is, and at all relevant times, has been in full force and effect.

5. Julian Estrada Gomez has been charged by Mexico with a criminal offense within its jurisdiction.

6. The offense with which Julian Estrada Gomez has been charged is an extraditable offense under the Extradition Treaty between the United States and Mexico.

7. The person before the court is the same person who is sought for prosecution in the request for extradition.

8.	The request for extradition contains competent evidence establishing probable cause to believe that Julian Estrada Gomez committed the charged offense of aggravated murder.

Accordingly, Julian Estrada Gomez is extraditable to Mexico for the offense of aggravated murder described in the government's extradition request.

DATED  April 6, 2022.

                                                       /s/ Youlee Yim You
                                                 Youlee Yim You
                                                 United States Magistrate Judge